**Steven I. BEILOWITZ d/b/a Stevens Beil, a sole proprietorship, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civil Action No. 02–3870.**

United States District Court, D. New Jersey.

Oct. 28, 2002.

---

Howard Langer, Esq., John J. Grogan, Esq., Sandals & Langer, LLP, Philadelphia, PA, Don P. Foster, Esq., Michael G. Petrone, Esq., Jeffrey A. Carr, Esq., Pepper Hamilton LLP, Philadelphia, PA, for Plaintiff, Steven I. Beilowitz, d/b/a Stevens Beil, a sole proprietorship.

Michael S. Waters, Esq., Stephen M. Payerle, Esq., Lois H. Goodman, Esq., Carpenter, Bennett & Morrissey, Newark, NJ, for Defendant, General Motors Corp.

Thomas G. Plunkett, Esq., Williams, Williams, Ruby & Plunkett, P.C., Birmingham, MI, for Non Party, Urban Science, Inc.

## OPINION

ORLOFSKY, District Judge.

In this hotly contested New Jersey Franchise Practices Act case, General Motors ("GM") has moved to disqualify Pepper Hamilton LLP ("Pepper Hamilton"), one of the law firms representing Plaintiff, Steven I. Beilowitz ("Beilowitz"). GM contends that Pepper Hamilton's legal representation of Urban Science, Inc. ("Urban Science"), GM's likely fact and expert wit-

ness in this case, warrants the disqualification of Pepper Hamilton from representing Beilowitz. For the reasons set forth below, I find that Pepper Hamilton's representation of Beilowitz in this matter does not present a conflict of interest under the New Jersey Rules of Professional Conduct, and I shall deny GM's motion to disqualify Pepper Hamilton.

## I. BACKGROUND

Beilowitz brought this action against GM, alleging, *inter alia,* violations of the New Jersey Franchise Practices Act, N.J.S.A. § 56:10–1, *et seq.* (2002). This case arises out of GM's implementation of a Dedicated Distribution Agreement with all sellers of AC Delco automotive parts manufactured by GM, including Beilowitz, who contends that the program will "destroy" his business. Compl. ¶ 15; *see also* Decl. of Steven I. Beilowitz ("Beilowitz Decl.") 10/9/02, ¶ 2.

Two law firms, Pepper Hamilton and Sandals & Langer, LLP, represent Beilowitz in this lawsuit. Pepper Hamilton is a national law firm that has also represented Urban Science, an automotive-industry consulting firm that has worked with GM in developing and implementing the Dedicated Distribution Group ("DDG") program that precipitated this action. *See* Ex. A, attached to Certif. of Lois Goodman ("Goodman Certif.") 9/30/02; *see also* Certif. of Mark Riashi 10/14/02, ¶ 3. GM intends to call Urban Science as both a fact witness and an expert witness in this litigation. *See* Carpenter Letter Br. 9/30/02 at 3.

Two partners at Pepper Hamilton, one of the firms representing Beilowitz, have performed the legal work for Beilowitz and Urban Science that is at issue in this motion to disqualify. René Hansemann ("Hansemann"), a partner in Pepper Hamilton's Detroit office, has represented Urban Science for fourteen years, the last nine of which she has served as its General Counsel. *See* Decl. of René Hansemann, Esq. (undated) ("Hansemann Decl.") ¶ 2, attached to Certif. of Don P. Foster ("Foster Certif.") 10/10/02. Don Foster ("Foster"), a partner in Pepper Hamilton's Philadelphia office, represents Beilowitz in this action against GM. *See* Decl. of Don P. Foster, Esq. ("Foster Decl.") 10/10/02, ¶ 2. Before accepting the representation, Foster "confirmed that no one at Pepper Hamilton was representing General Motors in any matter and that no conflict otherwise existed which would preclude the representation." *Id.*

On August 30, 2002, Foster caused a subpoena to be served on Urban Science, an existing Pepper Hamilton client, on behalf of Beilowitz. *See* Ex. B, attached to Goodman Certif. This subpoena was soon withdrawn and again served on Urban Science on September 10, 2002 by Sandals & Langer, Pepper Hamilton's co-counsel in this case. *See id.,* Ex. C. On September 16, 2002, Mary K. Pallett, Esq., of Pepper Hamilton's Detroit office, filed an *ex parte* motion to quash the subpoena, originally issued in the District of New Jersey, Case No. 02–CV–3870(SMO), by Pepper Hamilton's Philadelphia office. *See* Ex. E, attached to Goodman Certif. Ultimately realizing it was litigating against "itself," Pepper Hamilton withdrew from representing Urban Science in connection with the subpoena, as indicated in its correspondence of September 26, 2002 to GM's counsel. *See id.,* Ex. H.[1]

---

1. While I ultimately conclude that GM's motion to disqualify Pepper Hamilton should be denied, I strongly urge Pepper Hamilton to improve the manner in which it conducts "conflicts of interest" checks between its regional offices. Serving a subpoena on an existing firm client is, to say the least, a professional embarrassment to be avoided at all costs.

GM is represented in this case by the law firm of Carpenter, Bennett & Morrisey, which requested that Pepper Hamilton withdraw from representing Beilowitz because of Pepper Hamilton's representation of Urban Science, GM's intended fact and expert witness. *See id.*, Ex. F. Pepper Hamilton refused to do so, *id.*, Ex. I, and GM now moves to disqualify Pepper Hamilton.

This Court has jurisdiction over this action based on the diverse citizenship of the parties and the requisite amount in controversy, pursuant to 28 U.S.C. § 1332 (2002). I have considered this motion on the papers without oral argument pursuant to Fed.R.Civ.P. 78 (2002). For the reasons set forth below, GM's motion to disqualify Pepper Hamilton shall be denied.

## II. LEGAL STANDARDS GOVERNING DISQUALIFICATION

■ In the United States District Court for the District of New Jersey, "[t]he Rules of Professional Conduct ["RPC"] of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by Federal statute, regulation, court rule or decision of law." L. Civ. R. 103.1 (Gann 2002); *see also* N.J. Ct. R. 1:14 (Gann 2002). Conflicts of interest are governed by RPC 1.7, which provides, in relevant part:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless:

(1) the lawyer reasonably believes that representation will not adversely affect the relationship with the other client; and

(2) *each client consents after a full disclosure of the circumstances and consultation with the client . . .*

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) *the client consents after a full disclosure of the circumstances and consultation with the client.* . . . When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

(c) This rule shall not alter the effect of case law or ethics opinions to the effect that:

(1) in certain cases or categories of cases involving conflicts or apparent conflicts, consent to continued representation is immaterial, and

(2) in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.

*Id.* (emphasis added). RPC 1.7 applies not only to conflicts of interest involving parties to the lawsuit, but to conflicts of interest involving witnesses as well. *See In re Cendant Securities Litigation*, 124 F.Supp.2d 235, 242 (D.N.J.2000), discussed *infra*. Additionally, under RPC 1.10(a), "[w]hen lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so . . . ." *Id.*

In this case, RPC 1.7(a) is not applicable because there is no direct conflict between Urban Science and Beilowitz. The parties to this dispute are Beilowitz and GM. Urban Science may appear as a witness on behalf of GM, a client for whom Urban Science has provided consulting services, but Pepper Hamilton does not represent Urban Science in this action. *See* Pepper Hamilton Letter Br. 10/10/02, at 2. Conversely, Beilowitz has not brought an action against Urban Science, nor has he indicated any intention of doing so. Instead, this matter is governed by RPC 1.7(b) because I must decide whether Pepper Hamilton's representation of Beilowitz may be materially limited by its responsibilities to Urban Science. I must also determine whether such representation constitutes an appearance of impropriety under RPC 1.7(c) that warrants the disqualification of Pepper Hamilton.

## III. DISCUSSION

### A. WHETHER PEPPER HAMILTON'S REPRESENTATION OF BEILOWITZ AND URBAN SCIENCE CONSTITUTES A CONFLICT IN VIOLATION OF RPC 1.7(b)

 Carpenter, Bennett & Morrisey, counsel for GM, filed this motion to disqualify Pepper Hamilton based on Pepper Hamilton's longstanding representation of Urban Science, GM's potential fact and expert witness. Pepper Hamilton does not concede the existence of a conflict, but nonetheless elected to withdraw as Urban Science's counsel in this matter. *See* Foster Decl. ¶ 11. Additionally, in a sworn statement by Hansemann, a partner in Pepper Hamilton's Detroit office, she states that "Urban Science had and has no objection to Pepper Hamilton representing the Plaintiff in this matter." Hansemann Decl. ¶ 6. Likewise, despite Pepper Hamilton's history of representing Urban Science, Beilowitz has "no objection to Pepper Hamilton's continuing representation of Urban Science in other matters." Beilowitz Decl. ¶ 11. Beilowitz consented after full disclosure of the circumstances, as required by RPC 1.7(b):

> I have been advised about Pepper Hamilton's representation of a firm by the name of Urban Science, which I have been informed may be a witness in this case to be called by General Motors .... I have been told that Urban Science performed market research on behalf of General Motors in connection with the DDG program.

*Id.* ¶ 8.

Given the fact that Beilowitz and Urban Science have each given their consent, notwithstanding Pepper Hamilton's longstanding representation of Urban Science, there is no conflict of interest under RPC 1.7(b). In an opinion letter dated October 9, 2002, Professor Geoffrey C. Hazard, Jr.,[2] opined that these consents eliminate any conflict of interest raised by Pepper Hamilton's dual representation of Beilowitz and Urban Science. *Id.* at 1. As Pro-

---

**2.** Professor Geoffrey C. Hazard, Jr. is qualified as an expert witness under Fed.R.Evid. 702 (2002). Professor Hazard is a Trustee Professor of Law at the University of Pennsylvania Law School and teaches in the areas of Legal Ethics, Civil Procedure, and Federal Jurisdiction. *See* Curriculum Vitae, attached to Hazard Decl., at 1–2. He has also served on a number of professional legal ethics committees, including the Committee on Lawyers' Responsibility for Client Protection of the American Bar Association. *Id.* at 3. In addition, Professor Hazard is the author of a respected treatise on legal ethics, Geoffrey C. Hazard, Jr. & William Hodes, *The Law of Lawyering* (3d ed.2002), cited in the briefs filed by both Pepper Hamilton and Carpenter, Bennett & Morrisey in this case. Professor Hazard's Opinion Letter is based upon his review of the motion papers submitted in this matter. *See* Hazard Opinion Letter 10/9/02, at 1.

fessor Hazard also observed: "GM may well have a legal right to limit the disclosures made by Urban Science. However, any such right derives from a contract relationship between GM and Urban Science, not from any obligation of Pepper Hamilton or Mr. Beilowitz owed to GM." *Id.* Indeed, "Urban Science enters into contractual agreements with each of its clients wherein Urban Science is restricted from releasing any information related to its relationship with and work performed for its clients." Decl. of Sharif Farhat 9/16/02, ¶ 4. Any potential conflict of interest in this case is further mitigated because Pepper Hamilton has decided not to represent Urban Science in this action against GM. Accordingly, Urban Science has retained Thomas Plunkett, Esq., of Williams, Williams, Ruby & Plunkett, P.C., as its counsel in this action. *See* Letter from Plunkett to Court of 10/10/02, at 1.

Perhaps the most comprehensive opinion addressing RPC 1.7 in this District is *Cendant, supra,* 124 F.Supp.2d 235. In *Cendant,* the law firm of Paul, Weiss, Rifkind, Wharton & Garrison ("Paul Weiss") sought to represent two clients with adverse interests despite a direct conflict of interest under RPC 1.7(a). Paul Weiss had represented Amy Lipton, the former General Counsel and Vice–President of CUC, which merged with another corporation to form Cendant in 1997. *See Cendant,* 124 F.Supp.2d at 237. After the merger, Lipton became a Deputy General Counsel and Executive Vice–President of Cendant and was named as a defendant in one of the many lawsuits brought against Cendant. *Id.* Ernst & Young was the accounting firm that brokered the merger between CUC and Cendant that precipitated these lawsuits. *See id.* at 238. Cendant and Ernst & Young had a directly adverse relationship, and Lipton, as a former Cendant officer, was in a position adverse to Ernst & Young. *See id.* at 243. Ernst & Young was represented by Theodore Wells, who was then a member of the New Jersey law firm of Lowenstein Sandler, P.C. *See id.* at 237–38. A conflict arose when Wells left Lowenstein Sandler and took his practice to Paul Weiss, which was already representing Lipton. *See id.* at 238. In *Cendant,* my distinguished colleague, Judge Walls, disqualified Paul Weiss from representing Ernst & Young, *see id.* at 250. This was largely due to the fact that Lipton did not consent to the dual representation, as required under RPC 1.7. *Cendant,* 124 F.Supp.2d at 241.

Lipton, as a Deputy General Counsel and Executive Vice–President of Cendant, was a corporate "insider" with confidential information that was damaging to Ernst & Young. Lipton herself represented that her testimony would be adverse to Ernst & Young. *Id.* at 243. This presented a conflict based on a directly adverse relationship under RPC 1.7(a). By contrast, in this case, Urban Science is not one of GM's corporate insiders, but merely provided consulting services to GM under contract. *See* Hansemann Decl. ¶ 4.

As Pepper Hamilton points out in its briefs, the critical distinction between the facts in *Cendant* and the facts presented in this case is that both Beilowitz and Urban Science have *consented,* after full disclosure, to Pepper Hamilton's representation. *See* Pepper Hamilton Letter. Br. 10/10/02, at 1. Additionally, the disqualified law firm in *Cendant* sought to represent *simultaneously* a party to the litigation and an adverse third-party witness. In this case, Pepper Hamilton has withdrawn from representing Urban Science in this action and "continues to represent Urban Science only in matters unrelated to this litigation." *Id.* at 2. This does not violate RPC 1.7(b). "A client can consent to a conflict of interest, and clients often do so. There is nothing improper, in reality or in appearance, in a client's giving such con-

sent." Hazard Opinion Letter, at 1. I agree with Professor Hazard's conclusion and hold that Beilowitz's and Urban Science's consents cure any possible conflict of interest under RPC 1.7(b).

## B. WHETHER PEPPER HAMILTON'S REPRESENTATION OF BEILOWITZ AND URBAN SCIENCE CREATES AN APPEARANCE OF IMPROPRIETY IN VIOLATION OF RPC 1.7(c)

 This court has the discretion to order disqualification under RPC 1.7(c) notwithstanding the absence of an actual conflict of interest under RPC 1.7(b). *See Greig v. Macy's Northeast, Inc.,* 1 F.Supp.2d 397, 400 (D.N.J.1998). Under RPC 1.7(c), if Pepper Hamilton's representation of Beilowitz would create an appearance of impropriety, disqualification may be warranted.[3] There must be some reasonable basis to support the claim of impropriety greater than "a fanciful possibility." *State v. Loyal,* 164 N.J. 418, 429, 753 A.2d 1073, 1080 (2000). GM's counsel argues: "Because of its longstanding relationship with Urban Science, Pepper Hamilton is in a unique position of being able to rely upon knowledge and understanding of Urban Science's business and practice that no other adversary would possess." Carpenter Ltr. Br. 9/30/02, at 4. After considering the submissions of the parties, however, I find that Pepper Hamilton has not derived an advantage in this litigation based on its past representation of Urban Science in its general corporate matters.

GM's main concern is that Pepper Hamilton, during its representation of Urban Science, acquired confidential or proprietary information about GM and the DDG program, which could provide Beilowitz with a litigation advantage in this case. Such concerns typically arise in cases involving a "side-switching" attorney, whereby an attorney acquires a client's confidential information and subsequently resigns from his or her position in order to represent a party adverse to the original client, armed with the client's own secrets. *See e.g., Cardona v. General Motors Corp.,* 942 F.Supp. 968 (D.N.J.1996) (Orlofsky, J.). As I explained in *Cardona:*

> At the heart of every "side-switching attorney" case is the suspicion that by changing sides, the attorney has breached a duty of fidelity and loyalty to a former client, a client who had freely shared with the attorney secrets and confidences with the expectation that they would be disclosed to no one else. It is for this reason that the "appearance of impropriety doctrine" was adopted to protect the public, our profession, and those it serves. In short, this much maligned doctrine exists to engender, protect and preserve the trust and confidence of clients.

*Id.* at 975.

This case is distinguishable from *Cardona,* not only because there has been no "attorney side-switching," but because there has been no exchange of confidential client information. Both Foster and Hansemann have filed sworn declarations in which they explain that they have "obtained no information concerning the DDG program, or anything else relevant to this lawsuit, by virtue of Pepper Hamilton's representation of Urban Science." Foster Decl. ¶ 14. This argument is persuasive, given the fact that Pepper Hamilton's rep-

---

**3.** There is considerable controversy regarding the continued vitality and application of the "appearance of impropriety" doctrine in private civil litigation in New Jersey. *See State v. Loyal,* 164 N.J. 418, 429–30, 753 A.2d 1073, 1080 (2000). The doctrine's relevance in criminal matters and to issues of public-entity representation, however, is still generally accepted by the New Jersey Supreme Court. *See id.*

resentation of Urban Science as its general counsel is handled primarily by Pepper Hamilton's Detroit office, whereas Beilowitz's litigation action is being handled by Pepper Hamilton's Philadelphia and Cherry Hill, New Jersey offices.

More importantly, however, despite its longstanding relationship with Urban Science, Pepper Hamilton did not acquire any confidential or proprietary information relevant to the DDG program that is the basis of Beilowitz's lawsuit. Hansemann, the Pepper Hamilton partner who represents Urban Science in Detroit, explained:

> At no time during the representation of Urban Science have I, or any other Pepper Hamilton lawyer to my knowledge, acquired any information concerning General Motors' "DDG" program for its warehouse distributors which could be considered proprietary or confidential. Pepper Hamilton attorneys were not involved in any fashion in the work Urban Science did for General Motors in connection with the DDG program. While representing Urban Science in connection with the subpoena, we were not provided with any documents and were not given any information about the DDG program.

Hansemann Decl. ¶ 3.

In fact, GM's argument that Pepper Hamilton could have received proprietary information from Urban Science is belied by its own control over Urban Science's production of discovery in response to the subpoena reissued by Sandals & Langer on September 10, 2002. This is because Urban Science is barred by confidentiality agreements from freely disseminating client information:

> By contract, any information acquired by Urban Science during work it does for its customers, including the Urban Science work product itself, is considered proprietary to the customer. Accordingly, upon service of the subpoena,

Urban Science looked for instruction from General Motors, because it is contractually prohibited from revealing its customers' information. Urban Science agreed to work directly with General Motors to determine which documents would be produced and under what circumstances.

Hansemann Decl. ¶ 4. Indeed, GM has instructed Urban Science to limit the geographic scope of the materials produced in discovery thus far to the Philadelphia area. Thus, for GM to argue that Pepper Hamilton has or has had access to information to which GM itself limits and controls access is, to put it gently, disingenuous.

The facts presented in this action raise issues similar to those presented in *Pioneer Standard Elecs., Inc. v. Cap–Gemini America, Inc.*, No. 01–CV–2135, 2002 WL 553460 (N.D.Ohio Mar. 11, 2002). In *Pioneer*, the plaintiff sought to disqualify a law firm, Shearman & Sterling ("Shearman"), from representing the defendant, Cap Gemini, in a lawsuit because Shearman was also representing the plaintiff in an unrelated regulatory matter before the European Commission. *Id.* at \*1. The court denied the motion to disqualify because there was no evidence to suggest that Shearman, through its handling of the European Commission matter, gained any information about the plaintiff that could be used against it in Shearman's defense of Cap Gemini. *Id.* at \*3; *see also Ciba–Geigy Corp. v. Alza Corp.*, 795 F.Supp. 711, 718–19 (D.N.J.1992) (denying motion to disqualify and finding no "appearance of impropriety" based on law firm's previous representation of party bringing motion).

Similarly, in this action against GM, I find, based on the uncontradicted declarations submitted by Foster and Hansemann, that Pepper Hamilton has not had access to confidential or proprietary information that would be detrimental to GM or

advantageous to Beilowitz in this litigation. Prior to this lawsuit, Pepper Hamilton, in its capacity as General Counsel, counseled Urban Science on agreements with its customers. *See* Hansemann Decl. ¶ 2. As explained in the declarations, quoted *supra,* Pepper Hamilton did not have access to proprietary information about the GM DDG program at issue in this case.

In applying the "appearance of impropriety" doctrine, "we must view the conduct as would an ordinary knowledgeable citizen acquainted with the facts." *Loyal,* 164 N.J. at 430, 753 A.2d at 1080 (citations omitted); *Cendant,* 124 F.Supp.2d at 246. This inquiry is "highly fact-sensitive." *Id.* The facts here suggest no appearance of impropriety because the parties have consented to the representation, and Pepper Hamilton has had no access to Urban Science's proprietary customer information.

The *Cendant* decision also emphasized the appearance of impropriety that dual representation in the circumstances of that case presented would create: "The dual representation ... creates serious questions about Paul Weiss' ability to serve loyally two clients *in the same case* with conflicting clients." *Id.,* 124 F.Supp.2d at 246 (emphasis added). This case is strikingly different from *Cendant.* In this case, Pepper Hamilton does not seek to represent simultaneously both Urban Science and Beilowitz. Thus, there is little likelihood, if any, of an appearance of impropriety.

## C. PREJUDICE TO BEILOWITZ AND EQUITABLE CONSIDERATIONS

A party can suffer great harm by having his or her counsel disqualified. "Because disqualification of counsel during pending litigation is an extreme measure, courts must closely scrutinize the facts of each case to avoid injustice." *Cendant,* 124 F.Supp.2d at 249 (citations omitted). This requires a court to balance the competing interests of the need to maintain the highest standards of the profession against a client's right to choose his or her own counsel. *See id.* In today's world of commercial litigation, moreover, motions to disqualify "should be viewed with extreme caution for they can be misused as techniques of harassment." *Pioneer–Standard,* 2002 WL 553460, at *2 (citation omitted).

Additionally, one of the factors a court must consider in deciding a motion to disqualify is the timing of the filing of the motion. In *Dewey v. R.J. Reynolds Tobacco Co.,* 109 N.J. 201, 536 A.2d 243 (1988), the New Jersey Supreme Court determined that disqualification of a firm was appropriate under the RPC but declined to do so, explaining: "an order to disqualify counsel on the eve of trial would do more to erode the confidence of the public in the legal profession and the judicial process than would an order allowing the firm to continue its representation of the plaintiff." *Id.,* 109 N.J. at 219, 536 A.2d at 252.

Although this motion was not brought on the eve of trial, Beilowitz would clearly be prejudiced if Pepper Hamilton were to be disqualified at this point. Beilowitz specifically sought out Foster to represent him after Ballard Spahr Andrews & Ingersoll, LLP turned down his representation because of a conflict in interest. *See* Beilowitz Decl. ¶¶ 4–5. As skilled as Pepper Hamilton's co-counsel at Sandals & Langer may be, Beilowitz is relying on Foster's expertise in the New Jersey Franchise Practices Act and the great resources he has available to him at Pepper Hamilton. *See* Beilowitz Decl. ¶ 7. Foster has acquired significant knowledge about GM's DDG program and the automobile after-market parts industry, and Beilowitz has already paid Pepper Hamilton "tens of thousands of dollars ... in fees" *Id.*

¶ 7. Foster has worked on this matter "on almost a daily basis" since the end of July, and he has been primarily responsible for the exchange of discovery between Beilowitz and GM, has coordinated the preparation of Beilowitz's expert report, has defended numerous depositions, including Beilowitz's own, and has assisted in the preparation of numerous papers filed in support of this action against GM. *See* Foster Decl. ¶ 4. This great expenditure of resources, in addition to the fact that Beilowitz consented to Pepper Hamilton's legal representation, warrants against disqualification. In terms of timing, Beilowitz has filed a motion for a preliminary injunction that is currently scheduled to be heard on November 22, 2002. It is clear that the prosecution of that motion will be affected and perhaps delayed if Pepper Hamilton does not continue to represent him.

Finally, the circumstances in which this potential conflict of interest arose tips the balance against disqualification. At the time Foster was retained to represent Beilowitz, Foster did not know of Urban Science or of its role in accumulating data for review by GM in connection with the implementation of the DDG program. *See* Foster Decl. ¶ 3. Foster only learned of the conflict after receipt of GM's initial disclosures that Urban Science might have information of relevance to the case. *See id.* The potential conflict of interest was not clearly foreseeable, unlike an anticipated case of a law firm merger or the relocation of a partner, as was the case in *Cendant.*

In summary, based on the unique facts and circumstances presented in this case, I find that Urban Science's and Beilowitz's consent to Pepper Hamilton's representation cures any possible conflict of interest under RPC 1.7(b). Pepper Hamilton's previous representation of Urban Science does not provide Beilowitz with a litigation advantage. Moreover, there is no appearance of impropriety warranting disqualification under RPC 1.7(c) because Pepper Hamilton has withdrawn from representing Urban Science in this matter and has not had access to any proprietary or confidential information relating to this case arising out of its representation of Urban Science. Finally, Beilowitz has paid Pepper Hamilton "tens of thousands of dollars ... in fees," Beilowitz Decl. ¶ 7, and Pepper Hamilton has already expended considerable effort in support of Beilowitz's motion for a preliminary injunction. These factors also weigh against disqualification in this case.

## IV. CONCLUSION

For the reasons set forth above, I shall deny GM's motion to disqualify Pepper Hamilton, LLP as plaintiff's counsel. The Court shall enter an appropriate form of Order.

## ORDER

This matter having come before the Court on the motion of Defendant, General Motors Corp., to disqualify Pepper Hamilton, LLP as plaintiff's counsel in this matter, Howard Langer, Esq. and John J. Grogan, Esq., SANDALS & LANGER, LLP, and Don P. Foster, Esq., Michael G. Petrone, Esq. and Jeffrey A. Carr, Esq., PEPPER HAMILTON, LLP, appearing on behalf of Plaintiff, Steven I. Beilowitz d/b/a Stevens Beil, a sole proprietorship; Michael S. Waters, Esq., Stephen M. Payerle, Esq., and Lois H. Goodman, Esq., CARPENTER, BENNETT & MORRISSEY, appearing on behalf of Defendant, General Motors Corporation; and Thomas G. Plunkett, Esq., WILLIAMS, WILLIAMS, RUBY & PLUNKETT, P.C., appearing on behalf of Non–Party, Urban Science, Inc; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 28th day of October, 2002, hereby ORDERED that the motion of Defendant, General Motors Corp., to disqualify Pepper Hamilton, LLP as plaintiff's counsel is DENIED.