222 N.J. Super. 641 (1987)
537 A.2d 794
STATE OF NEW JERSEY
v.
ANTHONY T. CATANOSO, DACON CORPORATION, THEODORE DESANTIS, FOUNDATIONS & STRUCTURES, INC., CLYDE LATTIMER, WILLIAM E. MONAGHAN, PHILIP MATALUCCI, PANDULLO QUIRK ASSOCIATIONS, NELSON WIDELL, WILBERT WIDELL & CARL E. WIDELL & SON, DEFENDANTS.
Superior Court of New Jersey, Law Division (Criminal), Cumberland County.
Decided October 6, 1987.
*642 Lawrence G. Welle, Deputy Attorney General, for the State (W. Cary Edwards, Attorney General of New Jersey.)
Patrick T. McGahn, for William E. Monaghan.
SERATA, J.S.C.
This is a motion to disqualify Patrick T. McGahn, Esq., in the representation of defendant, William E. Monaghan.
On September 10, 1986, a State Grand Jury, # SGJI68-86-9, indicted defendants Anthony T. Catanoso, Theodore DeSantis, Clyde Lattimer, William E. Monaghan, Philip Matalucci, Nelson Widell, Wilbert Widell, Carl E. Widell & Sons, Inc., Foundation and Structures Inc., and Dacon Corporation in five counts for criminal conspiracy (second degree) (contrary to N.J.S.A. 2C:5-2); official misconduct (second degree) (contrary to N.J.S.A. 2C:27-2 and N.J.S.A. 2C:2-6); gifts to public servants (second degree) (contrary to N.J.S.A. 2C:27-6 and N.J.S.A. 2C:2-6); and theft by deception (second degree) (contrary to N.J.S.A. 2C:20-4 and N.J.S.A. 2C:3-6).
The indictment stems from alleged acts of conspiracy, bribery and official corruption by corporate and individual defendants Anthony Catanoso, Theodore DeSantis, Clyde Lattimer, William E. Monaghan, Philip Matalucci, Nelson Widell, Wilbert Widell, Carl E. Widell & Sons, Inc., Foundation & Structures Inc., Dacon Corporation, Pandullo Quirk Associates, and by unindicted co-conspirators over an eight-year period from April 1, 1978, to on or about May 14, 1986, in Atlantic and Cape May counties.
Essentially, the defendant freeholder and defendant county officer allegedly conspired with the defendant contractors in awarding construction contracts for the Cape May County *643 Municipal Utilities Authority, Ocean City Region Site Preparation Waste Water Treatment Plant in exchange for kick backs totaling several hundred thousand dollars.
Allegedly, Francis Pandullo, President of Pandullo Quirk Associates, the consulting engineer hired by the Cape May County Municipal Utilities Authority (CMCMUA) and John Vinci, former president of CMCMUA along with defendants Monaghan and DeSantis of Foundations and Structures and Cape May County Freeholder, Anthony Catanoso and County Treasurer Philip Matalucci, conspired to obtain bribes from Carl E. Widell & Sons and insure work for Foundations & Structures and continued the retention of Pandullo Quirk Associates as the consulting engineer to the CMCMUA.
Francis Pandullo pleaded guilty to charges contained in a separate indictment arising out of the investigation by the Attorney General's Office. He is now the State's key witness in the current trial.
The State moves to disqualify Patrick T. McGahn based on McGahn's prior representation of the State's key witness, Francis Pandullo. Pandullo hired McGahn as special counsel for Pandullo Quirk Associates (PQA), an indicted co-conspirator in this case, in the 1970's.
McGahn has admitted that he was apprised of the testimony and the questioning of certain employees of PQA in connection with an investigation relating to the site selection for the Cape May County Waste Treatment Plant. McGahn asserts that there is no connection shown between that matter and the case at bar.
Review of the grand jury testimony of Pandullo reveals that McGahn had no knowledge of any alleged wrongdoing committed either by Pandullo, or someone else, in Cape May County (T131-T133). However, Pandullo has indicated in his certification that McGahn was kept informed of events and interviews with respect to an investigation by the Cape May County Prosecutor into site selection practices of PQA as it pertained *644 to a commissioner of the CMCMUA. As late as 1977 McGahn was "kept abreast of the investigation as it pertained to the corporation." (certification of Francis Pandullo) However, McGahn was informed of various aspects of PQA's business by Pandullo. Pandullo shared confidences with McGahn. (certification of Francis Pandullo) McGahn presently represents William Monaghan, a principal of the indicted defendant Foundation & Structures Inc. Thus, the matters for which McGahn represented Pandullo and PQA are substantially related to the matters for which he now represents Monaghan.
Monaghan has offered to waive, to whatever extent required, his right to cross-examine Pandullo so that McGahn may continue to represent him.

LAW
The Sixth Amendment, applicable to the states by the Fourteenth Amendment, guarantees that in a criminal prosecution the defendant "shall enjoy the right ... to have the assistance of counsel for his defense." Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The New Jersey Constitution upholds a similar right. N.J. Const. (1947), Art. I, par. 10; State v. Sugar, 84 N.J. 1, 15-17 (1980). The right to retain counsel of one's own choice is not, however, absolute. State v. Furguson, 198 N.J. Super., 395, 401 (App.Div. 1985). Other courts have found that the Sixth Amendment's right to assistance of counsel encompasses a defendant's qualified right to be represented in a criminal prosecution by counsel of his or her own choice. United States v. Diozzi, 807 F.2d 10 (1st Cir.1986) (emphasis added). The right can be limited where the exercise of that right interferes with the "ethical administration of justice." Id.; see also State v. Furguson, 198 N.J. Super. at 401.
In moving to disqualify defendant's chosen counsel the State bears the burden of proving that disqualification is justified. State v. Morelli, 152 N.J. Super. 67, 70 (App.Div. *645 1977). Here, the State has met that burden by showing that McGahn's representation of Monaghan is materially adverse to Pandullo.
The New Jersey Rules of Professional Conduct, particularly RPC 1.7, provide:
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless:
(1) the lawyer reasonably believes that the representation will not adversely affect the relationship with the other clients; and
(2) each client consents after full disclosure of the circumstances and consultation with the client, except that a public entity cannot consent to any such representation.
McGahn's representation of Monaghan is adverse to Pandullo because confidences that Pandullo shared with McGahn will be disclosed in McGahn's defense of Monaghan. The representation remains adverse regardless of Monaghan's limited waiver of his Sixth Amendment right because disclosure might lead to the indictment of Pandullo.
The matters embraced herein are substantially related to the matters for which McGahn represented Pandullo and PQA. Where such substantially related matters exist "the court will assume that confidential information has passed between attorney and former client, notwithstanding the attorney's declaration to the contrary." Reardon v. Marlayne Inc., 83 N.J. 460, 473 (1980). These confidences, between attorney and former client, may not be disclosed without consent of the former client (PAQ) and Pandullo. New Jersey Code of Prof. Resp., DR4-101(C)(1), (1987), cited in Gray v. Commercial Union Ins. Co., 191 N.J. Super. 590, 594 (App.Div. 1983). McGahn might reveal his former client's confidences during cross-examination. Moreover, McGahn might utilize the former client's confidences in his defense of Monaghan. Thus, his representation of Monaghan is adverse to his former client Pandullo under RPC 1.7.
The constitutional right of confrontation afforded by the Sixth Amendment of the United States Constitution as well as *646 N.J. Const. (1947) Art. 1, par. 10, in general guarantees the accused the opportunity of cross-examination in criminal proceedings. See California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The confrontation requirement ensures:
(1) A witness will give his statements under oath  thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the greatest legal engine ever invented for the discovery of truth; (3) permits the jury, that is to decide the defendant's fate, to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility. [Id. at 158, 90 S.Ct. at 1935]
Here, Monaghan has agreed to limit his right to cross-examine Pandullo in an attempt to keep McGahn as his counsel. Ordinarily, only the trial judge may limit cross-examination of a witness. State v. Pontery, 19 N.J. 457, 473 (1955). The trial judge only seeks to ensure that the cross-examiner does not have a license to roam under the guise of impeaching the witness. Id. The right of cross-examination is usually limited only to protect infant witnesses. See State v. Cranmer, 134 N.J. Super. 117, 122 (App.Div. 1975).
The self-imposed limitation on Monaghan's right to cross-examine Pandullo, undoubtedly urged on him by McGahn, is inconsistent with the ethical administration of justice. McGahn's duties to his current client conflict with his required loyalty to Pandullo. See RPC 1.7; New Jersey Code of Prof. Resp., DR4-101 (1987). Therefore, McGahn must be disqualified from representing Monaghan.
New Jersey Rule of Professional Conduct 1.9 provides:
(a) A lawyer who represented a client in a matter shall not thereafter
(1) represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former clients consents; or
(2) use information relating to the representation to the disadvantage of the former client except as RPC 1.6 would permit with respect to a client or when the information has become generally known.
McGahn has admitted that he was apprised of the testimony and questioning of certain employees of PQA relating to the *647 site selection for the CMCMUA plant. This case centers around the conduct of corporate and individual defendants and unindicated co-conspirators connected in various ways to the operations of the CMCMUA. A McGahn memorandum communicated to Pandullo specific information concerning defendants Matalucci and Catanoso. It appears from detailed memos prepared by employees of PQA, after they appeared before a Cape May County Grand Jury which was looking into alleged irregularities concerning the CMCMUA, that a nexus existed between McGahn and the employees of PQA. He appears to have been a legal consultant to PQA during this grand jury investigation. In this capacity, he undoubtedly became privy to confidential information. Since the current indictment arises out of the conduct of the individual defendants linked to the operation of the CMCMUA, the subject matter of the prior representation is substantially related to the current representation. See Reardon v. Marlayne Inc., 83 N.J. 460 (1980) (plaintiff's attorney and his firm disqualified on the ground that confidences were made known to him at earlier time as attorney representing a manufacturer in defense of substantial similar suits); see also T.C. Theatre Corp. v. Warner Bros. Pictures, Inc., 113 F. Supp. 265 (S.D.N.Y. 1953) (The court will assume that during the course of the former representations confidences were disclosed to the attorney bearing on the subject matter of the representation).
Monaghan's interest are materially adverse to the interests of Pandullo because the current representation and right disclose certain confidences made to McGahn by Pandullo. Therefore, on the basis of RPC 1.9(a)(1) McGahn must be disqualified from representing Monaghan.
McGahn must also be disqualified because of the "appearance of impropriety." Matter of Petition for Review of Opinion No. 569, 103 N.J. 325 (1986). Where there exists an appearance of impropriety in an attorney's representation of a client, the representation must cease. Id. Even if no actual conflict or attributed conflict existed in this matter, McGahn must be *648 disqualified because the appearance of impropriety is created by his representation of his former client who is now the State's chief witness.
The Supreme Court has had a long history of requiring attorneys to avoid even the appearance of impropriety. Id. at 329. The Rules of Conduct stress the importance of the doctrine. See id. n. 4 (applicable under Rule 1.9(b)). "A lawyer must avoid even the appearance of impropriety ... to the end that the image of disinterested justice is not impoverished or tainted." State v. Rizzo, 69 N.J. 28, 30 (1975). "The doctrine is intended to bolster the public confidence in the integrity of the legal profession." In re Cipriano, 68 N.J. 398 (1975). It is from "the viewpoint of the public from which [the Supreme] Court has chosen to judge whether particular conduct would constitute the appearance of impropriety." Matter of Petition For Review of Opinion No. 569, 103 N.J. at 331.
If there is an "adequate factual basis" for an informed citizen to conclude that there would be a "high risk" of impropriety if defendant's lawyer continued to represent his client, then the lawyer must be disqualified. Id.
In this case, McGahn is, in effect, an adversary to his former client. If McGahn acts as a zealous advocate for his current client, which he most certainly will, McGahn must breach the duty of loyalty that he owes to his former client. See, RPC 1.7(c)(2); In re Corn Derivatives Antitrust Litigation, 748 F.2d 157, 161 (3d Cir.1984). As such, there exists an "adequate factual basis" for informed citizens to conclude that there is a "high risk" of impropriety in McGahn representing Monaghan in light of McGahn's previous representation of Pandullo. In a layman's eyes, the man who McGahn once represented stands to be discredited, on cross-examination, by his former attorney. This development potentially creates a high risk of impropriety. Therefore, McGahn must be disqualified as counsel for Monaghan.
*649 Lawrence G. Welle, Deputy Attorney General, will submit an order in conformance with this Opinion.