**In re CENDANT CORPORATION SECURITIES LITIGATION.**

**This Document Relates to All Matters.**

**No. CV 98–1664(WHW).**

United States District Court,
D. New Jersey.

Dec. 11, 2000.

---

Douglas S. Eakeley, Lowenstein Sandler PC, Roseland, NJ, for Ernst & Young.

Michael M. Rosenbaum, Budd Larner Gross Rosenbaum Greenberg & Sade, Short Hills, NJ, for Cendant Corp.

Daniel H. Bookin, O'Melveny & Myers LLP, San Francisco, CA, for Amy Lipton.

## OPINION

WALLS, District Judge.

Ernst & Young, LLP ("E & Y") moves for declaratory judgment that Theodore Wells, Esq., may represent E & Y in this litigation despite that (1) Mr. Wells left Lowenstein Sandler, PC ("Lowenstein") in January 2000 to join Paul, Weiss, Rifkind, Wharton and Garrison ("Paul Weiss"); (2) Paul Weiss has for the last two years represented Amy N. Lipton, former Vice President and General Counsel of CUC and former Executive Vice President and Deputy General Counsel of Cendant; and (3) Ms. Lipton has not consented to the simultaneous representation of her and E & Y by Paul Weiss. The motion is opposed by Cendant Corporation ("Cendant") and Ms. Lipton. The motion is denied.

## BACKGROUND

Since April 1998, the Paul Weiss firm has represented Amy N. Lipton, former Vice President and General Counsel of CUC and former Executive Vice President and Deputy General Counsel of Cendant. Ms. Lipton had been Vice President and General Counsel of CUC before it merged with HFS to form Cendant in 1997. After the merger, she served as General Counsel of Cendant's CUC Division and as Deputy General Counsel and Executive Vice President of Cendant. Before she became General Counsel to CUC, Ms. Lipton had served as outside counsel to CUC beginning in the early 1980s. Ms. Lipton was named as a defendant in one of the numerous *Cendant* actions, *Deutch v. Silverman,* but in August 1999 was dismissed from the action by this court because of a lack of personal jurisdiction. *See In re Cendant Corporation Derivative Action Litigation,* 189 F.R.D. 117 (D.N.J.1999).

Ms. Lipton's representation by Paul Weiss has continued since her dismissal as a defendant in the *Silverman* matter. Recently, she was served (through Paul Weiss) with a subpoena which requested documents relating to various aspects of the alleged fraud in this matter. Ms. Lipton will be represented by Paul Weiss with regard to her responses to this subpoena. *See* Cendant Brief at 10. Cendant asserts that this representation is likely to continue in connection with investigations by the SEC and the United States Attorney's Office. *See* Cendant Brief at 10. Ms. Lipton asserts in her Certification that she has disclosed to Paul Weiss privileged and confidential matters of CUC, Cendant, and its CUC Division and has discussed in confidence with Paul Weiss activities of E & Y and communications between E & Y and Cendant. Lipton Cert. ¶¶ 6–7.

E & Y is and has been represented in this litigation by Lowenstein. Mr. Wells was a partner at the Lowenstein firm until January 2000. E & Y contends that during that time, Mr. Wells played an "integral role in all facets of E & Y's represen-

tation, including the development of E & Y's claims, defenses, and theories of the case." E & Y Brief at 2. In January 2000, Mr. Wells left Lowenstein and relocated his practice to Paul Weiss. E & Y asserts that Mr. Wells is E & Y's long-standing trial counsel of choice and does not want to lose him because he is "irreplaceable." E & Y Brief at 2. Cendant responds that E & Y has been represented by both the Lowenstein firm and Mayer, Brown & Platt in this matter and argues that "[i]t cannot be said that E & Y has not been able to find competent lawyers with experience litigating complex accounting fraud cases to represent it for the past two years." Cendant Brief at 11. It also argues that Mr. Wells has had no "public" involvement in this matter except for one court appearance on July 27, 1999. *Id.*

Earlier this year, E & Y, through Lowenstein, reached out to Ms. Lipton's counsel to inquire whether Ms. Lipton would consent to Mr. Wells' representation of E & Y in the litigation between E & Y and Cendant. *See* Lipton Cert. ¶ 8. Ms. Lipton retained Daniel Bookin, Esq. of O'Melveny & Myers to advise her on this issue. *Id.* Ms. Lipton states that she also consulted Cendant's counsel with regard to her decision. Ultimately, Ms. Lipton declined to give her consent to the representation by Mr. Wells in the Cendant litigation.

E & Y contends that to avoid any possible inference of impropriety, Paul Weiss instituted ethical protections immediately upon Mr. Wells' arrival at the firm.[1] These protections include: (1) a prohibition on any communication between Mr. Wells and anyone at the firm concerning "the substance" of the firm's representation of Ms. Lipton (and conversely, a prohibition against Mr. Wells' sharing information regarding the representation of E & Y with attorneys who represent Ms. Lipton); (2) a prohibition on Mr. Wells'

access to any files regarding Ms. Lipton; (3) a requirement that Mr. Wells remain "disassociated" with any aspects of the case which directly involve Ms. Lipton; and (4) an arrangement that co-counsel for E & Y, and not Mr. Wells, will conduct any future discovery regarding Ms. Lipton or cross-examination of her.

Although E & Y consented to the dual representation, Ms. Lipton did not. E & Y argues that as evidenced by a July 6, 2000 letter from Carl Greenberg, Cendant "undermined" the discussions by persuading Ms. Lipton to withhold her consent. E & Y argues that this conduct by Cendant is nothing more than "a vexatious attempt to deprive E & Y of its existing counsel of choice." E & Y Brief at 4. E & Y argues that Ms. Lipton's consent is not necessary and that it only sought her consent out of an abundance of caution. E & Y now asks this Court to find that there is no impermissible conflict of interest between Ms. Lipton and E & Y that would prevent Paul Weiss from representing both Ms. Lipton and E & Y (or, if there is such a conflict, it can be removed by the use of the ethical safeguards described above). E & Y argues that Ms. Lipton has never been a "party adverse" to E & Y and is "at most" a potential witness. E & Y Brief at 9.

Cendant argues that Ms. Lipton's testimony is vital to this litigation and that she is expected to be a "key witness" regarding E & Y's work with the CUC merger reserves. Cendant argues that this is one of the most significant parts of the fraud at CUC. Cendant refers to E & Y's reliance in its cross-claims against Cendant on a memo that purports to summarize a conference call among Ms. Lipton and others at E & Y which reads that Ms. Lipton "confirmed that she understood the requirements of FAS 5 and that in her opinion the reserve that management was

---

1. Cendant comments that Paul Weiss partner Gerard Harper sent a letter to Douglas Eakeley at Lowenstein in September 2000, which stated that certain statements in a June 29 letter by Mr. Eakeley to the Court were inaccurate but did not identify which statements. Cendant Brief at 12. Cendant argues that these incorrect statements may be related to when these ethical safeguards were actually instituted. *Id.* at 31.

creating of $75,000,000 is a reasonable estimation of how much it would cost to settle such cases." Cendant Brief at 7–8, quoting Ex. B at 1. Cendant argues that because Ms. Lipton gave a different account of this conference call to the Audit Committee, it will be a contested issue at trial. Cendant Brief at 8. Cendant also contends that Ms. Lipton will be a key witness on other topics such as (1) the establishment of a $90 million litigation component of the "Ideon reserve"; (2) the improper charging of $30 million against the Cendant merger reserve in connection with the renegotiation of CUC's contract with CNA; (3) a meeting at which E & Y's Mark Rabinowitz assured former HFS executives that CUC's accounting treatment of the Ideon merger reserve was proper. Cendant Brief at 8–9. E & Y responds that Ms. Lipton is not likely to be adverse to E & Y because there is additional evidence that apparently contradicts her accounts to the Audit Committee. E & Y also contends that there is evidence that she did not have knowledge of certain issues, while Cendant contends to the contrary. Cendant Reply Brief, at 2. Thus, E & Y disputes how critical Ms. Lipton's testimony will be and exactly how "adverse" it will be to E & Y's position. Ms. Lipton asserts her own belief that her testimony will be adverse to E & Y.

E & Y frames the issue before the Court as follows:

> ... whether an attorney who has relocated his practice to a large firm may continue to represent a party to complex securities proceedings where one (or more) of his new partners represents a non-party witness, where stringent ethical safeguards were established at the outset of the situation, where the party/client has consented to the arrangement but where the potential witness/client has withheld such consent at the insistence of her former employer/client.

E & Y Brief at 6, n. 6. E & Y's simple answer is that there would be no ethical violation under these circumstances.

Cendant argues that the proposed dual representation by Paul Weiss of both E & Y and Ms. Lipton is unprecedented and would violate the following four provisions of the New Jersey Rules of Professional Conduct ("RPC" or "RPCs"):

1. Rule 1.7(a), which prohibits a lawyer from representing one client whose interests are "directly adverse to another client" absent the consent of both clients;

2. Rule 1.7(b), which prohibits a lawyer from representing one client when such representation would "materially limit" the ability of the lawyer to represent the first client, absent the consent of both clients;

3. Rule 1.9, which Cendant says prohibits a lawyer from representing a party's former lawyer and a party's adversary on the same or a substantially related matter; and

4. Rule 1.7(c), which prohibits dual representation in circumstances that would create an "appearance of impropriety," regardless of the consent of the clients.

Cendant Brief at 2–3. Cendant further claims that the "firewall" erected by Paul Weiss, which according to E & Y is sufficient to overcome any potential conflict, cannot solve any of the potential conflicts because (1) New Jersey does not allow the use of such ethical screens for private lawyers with conflicts of interest; and (2) such safeguards would not overcome the conflict even if they were permitted. Cendant Brief at 4. This is because Cendant expects Ms. Lipton to be a critical witness in the litigation and believes Paul Weiss cannot represent at the same time both interests without risking to compromise the interests of either Ms. Lipton or E & Y. Ms. Lipton asserts that she was within her rights to decline consent to the dual representation. She believes that her testimony is likely to be adverse to E & Y and she

has a legitimate concern to protect the confidences of her former clients (CUC and Cendant). She further advances that:

> [Ms. Lipton] is entitled to attorneys who will represent her without inhibition with respect to [E & Y], especially during discovery. Such representation may well include assertions of privilege, objections to discovery requests, and the multitude of other disputes that arise during hotly contested cases such as this one.

Lipton Brief, at 1. She maintains that "the danger that Ms. Lipton's attorneys may (even *subconsciously*) pull their punches against Mr. Wells' client is one that the Rules of Professional Conduct are designed to guard against." *Id.* (emphasis added). Like Cendant, Ms. Lipton contends that E & Y's proposed dual representation would violate Rules 1.7(a) and (b). She objects to the proposal of E & Y's co-counsel maintaining responsibility for all aspects of E & Y's representation that deal with her, arguing that "[e]ven if such legal gymnastics were possible, Paul Weiss cannot avoid its duty of loyalty to Ms. Lipton by having another law firm question her or address her role in the case." Lipton Brief at 2.

### DISCUSSION

### I. *The Declaratory Judgment Act*

The Declaratory Judgment Act allows:

> In a case of *actual controversy* within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (emphasis added). The Act requires that "there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established acts.'" *Ashcroft v. Mattis,* 431 U.S. 171, 172, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977) (citation omitted). At the outset, Cendant

argues that E & Y's current motion presents a nonjusticiable issue to the Court and seeks an impermissible advisory opinion because Mr. Wells has not filed a notice of appearance on behalf of E & Y. For purposes of deciding this motion, the Court will assume a justiciable issue under the Act.

### II. *Existence of Conflict of Interest Under the New Jersey Rules of Professional Conduct*

1. *Rules 1.7(a)-(b): Direct and Indirect Conflicts*

New Jersey Rule of Professional Conduct 1.7, "Conflict of Interest: General Rule," directs that:

> (a) [A] lawyer shall not represent a client if the representation of that client will be directly adverse to another client unless: (1) the lawyer reasonably believes that representation will not adversely affect the relationship with the other client; and (2) *each client consents* after a full disclosure of the circumstances and consultation with the client....
>
> (b) A lawyer shall not represent a client if the representation of that client *may be materially limited* by the lawyer's responsibilities to another client ... unless: (1) the lawyer reasonably believes *the representation will not be adversely affected;* and (2) *the client consents* after a full disclosure of the circumstances and consultation with the client....

RPC 1.7(a)-(b) (emphasis added). Because these rules are similar, it is appropriate to address them together. While Rule 1.7(a) addresses conflicts between clients whose interests are "directly adverse," Rule 1.7(b) addresses conflicts between clients where the interests of one client may "materially limit[ ]" the lawyer's responsibility to the interests of another client. Rule 1.7(a) requires the consent of both clients for representation to continue, while Rule 1.7(b) requires the consent of a client

whose interests would be "limited" by the representation of another client. Both rules require reasonable belief by the attorney that the representation will not be adversely affected. Ms. Lipton and Cendant both argue that under Rule 1.7(b), Ms. Lipton's representation would be materially limited by Paul Weiss' representation of E & Y. Because Ms. Lipton has not consented to the dual representation, if either 1.7(a) or 1.7(b) would be violated by the dual representation, Paul Weiss may not represent E & Y.[2]

■ The ethical conflict created by the proposed representation of E & Y by Mr. Wells arises from Rule 1.10, entitled "Imputed Disqualification":

(a) When lawyers are associated in a firm, none of them shall knowingly represent a client *when any one of them practicing alone would be prohibited* from doing so by RPC 1.7, RPC 1.8, RPC 1.9 or PRC 2.2. . . .

(e) A disqualification proscribed by this rule may be waived by the affected client under the conditions stated in RPC 1.7 except where prohibited by law or regulation. . . .

RPC 1.10. *See Greig v. Macy's Northeast, Inc.*, 1 F.Supp.2d 397 (D.N.J.1998) ("where an attorney in a firm is prohibited from representing a client as a result of an enumerated conflict of interest, RPC 1.10 provides for the imputed disqualification of all the lawyers from that firm"). Under Rule 1.10, if Ms. Lipton's attorneys at Paul Weiss would be prohibited from representing E & Y because of a conflict of interest under Rule 1.7 or 1.9, then no other attorney at Paul Weiss—including Mr. Wells—may represent E & Y without the appropriate consent.

■ Cendant argues that E & Y and Ms. Lipton are "directly adverse" to each other because Ms. Lipton is a key witness who will give testimony to defeat E & Y's principal defense, which seeks to cast blame on former CUC executives and Cendant. Cendant Brief at 18. As example, Ms. Lipton is expected to contradict E & Y's allegation that she attested to the reasonableness of the Cendant merger reserve, and Cendant expects E & Y to attempt to avoid liability because of reasonable reliance on this representation. Cendant Brief at 18. Cendant further argues that E & Y's service of the subpoena on Ms. Lipton illustrates that Ms. Lipton's position will be adverse to that of E & Y. According to Cendant, Ms. Lipton's testimony about the Cendant merger reserve will require vigorous cross-examination because of inconsistencies between documentary evidence and her interview by the Audit Committee.

Counsel for E & Y contended at oral argument that the term "directly adverse" in Rule 1.7(a) applies only to parties suing each other, but later conceded that it may reach some situations where a principal witness for one party is adverse to another party. Counsel further agreed that whether a witness is "directly adverse" to a party must be determined on a case-by-case basis. Although there is some support for the more limited interpretation in the Commentary to ABA Model Rule 1.7 that "[p]aragraph (a) prohibits representation of opposing parties in litigation," and that other conflicting interests are governed by paragraph (b) (*see* Comment to MR 1.7, Annotated Rules of Professional Conduct (1999)), there is equal support for the contention that adverse witnesses (in addition to parties to the litigation) should also be covered by paragraph (a) in *ABA Formal Opinion 92-367:*

The Committee believes that as a general matter *examining one's own client as*

---

**2.** E & Y makes much of Cendant's purported role in persuading Ms. Lipton to withhold her consent. Even though Cendant and Ms. Lipton both deny any inappropriate influence on Ms. Lipton's decision, this issue is irrelevant to the Court's inquiry. The RPCs do not contain any requirement of reasonableness for withholding consent. Moreover, Ms. Lipton's explanation is reasonable: She believes that the ethics screen proposed by E & Y would be insufficient to overcome the risks posed by Paul Weiss' divided loyalties.

an adverse witness on behalf of another client, or conducting third party discovery of one client on behalf of another client, is likely (1) to pit the duty of loyalty to each client against the duty of loyalty to the other; (2) to risk breaching the duty of confidentiality to the client-witness; and (3) present a tension between the lawyer's own pecuniary interest in continued employment by the client-witness and the lawyer's ability to effectively represent the litigation client. *The first two of these hazards are likely to present a direct adverseness of interest falling within Rule 1.7(a); all three may constitute material limitations on the lawyer's representation, so as to come under Rule 1.7(b).*

ABA Formal Opinion 92–367 (1992) (emphasis added). Other jurisdictions which have interpreted Rule 1.7 have embraced the view that adverse witnesses, in addition to parties, may be "directly adverse" within the meaning of Rule 1.7(a). *See Connecticut Informal Opinion 99–14,* CT Eth. Op. 99–14, 1999 WL 958020 (Conn. Bar Assn. July 28, 1999) (attorney would be prohibited under both Rules 1.7(a) and (b) from cross-examining a witness in one matter who was a client in another matter; and because of "the duty of loyalty would be compromised in relation to the witness-client, and the quality of the representation is compromised in relation to the [other] client," the lawyer should not attempt to seek consent of either client); *Michigan Opinion RI–218,* MI Eth. Op. RI–218, 1994 WL 761154 (Mich.Prof.Jud.Eth. August 16, 1994) (if the testimony of the client/witness is adverse to the interests of the lawyer's other client, then the lawyer would be disqualified under Rules 1.7(a) and (b)). Several cases cited by Cendant, decided under other rules, support an in-terpretation of Rule 1.7(a) that would encompass adverse witnesses. *See State v. Catanoso,* 222 N.J.Super. 641, 643–45, 648, 537 A.2d 794 (Law Div.1987) (former attorney-client relationship between lawyer and government's witness prohibited lawyer from representing current client, because lawyer would be "an adversary to his former client" and to "act[ ] as a zealous advocate for his current client ...," [the lawyer] must breach the duty of loyalty that he owes to his former client)[3]; *State v. Loyal,* 164 N.J. 418, 429, 753 A.2d 1073 (2000) (lawyer who represented a criminal defendant was disqualified because the attorney's representation of one of the government's main witnesses against his client in the past created an appearance of impropriety); *In re Cohn,* 46 N.J. 202, 212, 216 A.2d 1, 5 (1966) (attorney's concurrent representation of a client who was a witness against another client in a separate proceeding "placed him in a position where he could receive information from each client which could be used to the advantage of the other. Clearly there were conflicts of interest between [the two client] which ... would make it almost impossible to adequately represent both parties in their respective proceedings.").[4]

E & Y contends that even if Ms. Lipton is "adverse" within the meaning of Rule 1.7(a), it does not create an ethical conflict because of the "ethical safeguards which have been (and which shall remain) in place." E & Y Brief, at 9. This argument fails to recognize that the "safeguards" would only be a remedy to the conflict of interest. E & Y cites "plaintiff and defendant" and "employee and employer" as obvious examples that are "directly adverse." However, corporations are necessarily personified by their wit-

---

3. *Catanoso* was decided under Rule 1.7(a), even though Rule 1.9 (applicable to former attorney-client relationships) should have controlled. The reasoning in that case, however, is sound and applies here.

4. *Loyal* was decided under Rule 1.7(c) (appearance of impropriety standard) and 1.9 (governing former client relationships), but its reasoning, too, is applicable. *Cohn* was decided under the old Canon 29, which provided that attorneys must "strive at all times to uphold the honor and to maintain the dignity of the profession." 46 N.J. at 212, 216 A.2d 1.

nesses. No party disputes that Cendant and E & Y are "directly adverse" parties in this litigation. This Court does not doubt that Ms. Lipton, as former general counsel and an officer of Cendant at the time of the events to which she will testify, will be adverse to E & Y because of the nature of her former position at Cendant. Ms. Lipton herself represents that her testimony will be adverse to E & Y. This Court finds that Ms. Lipton's testimony is likely to be "adverse" to E & Y to the extent she is expected to testify about the supposed wrongdoing of E & Y, CUC and/or Cendant. Rule 1.7(a) would be violated by Paul Weiss' representation of E & Y without her consent.

E & Y argues that the reasoning of *Formal Opinion 92–367* is inapplicable here. There, the Committee found that the attorney was disqualified from representing the defendant when he represented the doctor, who would be testifying against the defendant, in another matter. E & Y Brief at 10, citing *Formal Opinion 92–367*, at 2. E & Y admits that the Committee found that the dual representation would (1) "pit the duty of loyalty to each client against the duty of loyalty to the other client"; and (2) "risk breaching the duty of confidentiality to the client-witness." E & Y Brief at 10. However, E & Y attempts to distinguish this case on the basis that (1) in the present matter, no Paul Weiss attorney would cross-examine Ms. Lipton or participate in discovery against her, but rather this would be handled solely by E & Y's co-counsel; and (2) there is no risk of breaching any duty of confidentiality to either client because of the "ethical wall" erected at Paul Weiss and because Mr. Wells would not participate in any aspects of the case relating to Ms. Lipton. This argument fails, because

Mr. Wells or his colleagues at Paul Weiss at some point will be required to work with co-counsel to develop trial strategy, organize opening and closing arguments, and prepare other aspects of the case. As observed by the Michigan Committee on Ethics in *Opinion RI–218:*

> To establish an ethical violation under Rule 1.7(a), one does not have to prove prejudicial impact, negative result, or an exchange of confidential information. The only prerequisites for the establishment of an ethical violation are those clearly set forth in the rule itself. . . . The 'directly adverse' language does not imply that a bad result must occur before representation is impermissible. It is the interests of the clients with which the rule is concerned, not the result obtained.

*Id.,* quoting *Committee on Legal Ethics v. Frame,* 189 W.Va. 641, 433 S.E.2d 579 (1993). E & Y's argument that it is insulted by the suggestion that the duty of loyalty or confidentiality could be breached (even unconsciously) by Paul Weiss or Mr. Wells in their representation of either E & Y or Lipton is misplaced. No one—especially this Court—doubts the integrity and sincerity of purpose of Mr. Wells and Paul Weiss. This inquiry concerns the possibility of such breaches occurring, not actual breaches of these duties how strictly the attorneys are able to adhere to any proposed ethical firewalls.[5]

The Court finds that representation by Paul Weiss of E & Y would violate Rule 1.7(b) as well, which forbids dual representation when the representation of one client would "materially limit" the ability of the attorney to represent the other client. As the ethics opinions described above reflect, there is no doubt that representing a party and a witness adverse to

---

**5.** Furthermore, it is difficult for this Court to believe that the proposed firewall is leakproof, especially in a firm with over 175 attorneys in the litigation department alone. Presumably, numerous attorneys would be required to assist in trial preparation and discovery for both E & Y and Ms. Lipton. Notwithstanding the good faith efforts of the attorneys to adhere to the firewall, this Court is cognizant that casual conversations in hallways, elevators, and other common areas may take place and may be overheard by the "screened" attorneys for either E & Y or Ms. Lipton.

that party-client would—by imputation—implicate Rules 1.7(a) and (b). Cendant argues that Paul Weiss' representation of E & Y would limit its ability to represent Ms. Lipton. Cendant contends that "the duty of loyalty demands that a client not be concerned with whether her lawyer may be influenced for whatever reason by the differing interests of another of the lawyer's clients." Cendant Brief at 21, citing *Formal Opinion 92–367*, at 2, and quoting *Estates Theatres, Inc. v. Columbia Pictures Indus.*, 345 F.Supp. 93, 99 (S.D.N.Y.1972) ("lawyer should not be permitted to put himself in a position where, even unconsciously, he will be tempted to 'soft pedal' his zeal in furthering the interests of one client in order to avoid an obvious clash with those of another."). Ms. Lipton has declined to consent to the dual representation out of her concern that Paul Weiss' duty of loyalty would be impaired.

Apparently, E & Y dismisses the issue of loyalty under Rules 1.7(a) and (b) without any real analysis: It merely asserts that Mr. Wells will not be limited in his ability to represent E & Y because of Paul Weiss' representation of Ms. Lipton. E & Y contends that it is speculative and "insulting" to suggest that Paul Weiss' zeal will be compromised in its representation of Ms. Lipton. E & Y Reply Brief, at 10. This argument fails to acknowledge that under Rule 1.7(b), the critical issue is whether the representation *may be* limited. The possibility of a breach occurring (such as the risk of inadvertent disclosure of a confidence or overhearing a conversation of a colleague in the cafeteria or hallway), as opposed to actual improper conduct, results in a violation of Rule 1.7(b). E & Y further stresses that any "limitation" would be removed by E & Y's consent to the dual representation. This ignores the limitation that would exist on Paul Weiss' ability to represent Ms. Lipton, discussed above, and which cannot be removed without her consent under Rule 1.7(b). As reviewed, the ethical safeguards E & Y proposes do not eliminate the conflict itself and are not a recognized remedy for conflicts involving two current clients. This Court concludes that without Ms. Lipton's consent, Paul Weiss may not represent E & Y under Rules 1.7(a) and (b).

### 2. *Rule 1.9*

██ New Jersey Rule of Professional Conduct 1.9, entitled "Conflict of Interest: Former Client," provides:

A lawyer who has represented a client in a matter shall not thereafter: (1) represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of *the former client* unless the *former client consents* after a full disclosure of the circumstances and consultation with the former client; or (2) use information relating to the representation to the disadvantage of the *former client* except as RPC 1.6 would permit with respect to a client or when the information has become generally known . . . .

RPC 1.9(a) (emphasis added). Subsection (b) of Rule 1.9 further states that the rule incorporates the "appearance of impropriety" standard of Rule 1.7(c). Under Rule 1.9, a conflict of interest exists if the movant shows (1) the existence of a *past attorney-client relationship* between the movant and the attorney sought to be disqualified; (2) that the interests of the attorney's current client are materially adverse to those of the movant; and (3) the current representation involves the same or a matter substantially related to the former representation. *Essex Chemical Corp. v. Hartford Accident and Indemnity Co.*, 993 F.Supp. 241, 246 (D.N.J.1998); *Reardon v. Marlayne, Inc.*, 83 N.J. 460, 474, 416 A.2d 852, 859–60 (1980) (citing *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir.1978)).

Cendant argues that Ms. Lipton's status as a former attorney of Cendant and her sharing of confidences obtained in that po-

sition with her Paul Weiss attorneys should disqualify Paul Weiss from representing E & Y under Rule 1.9. Cendant observes that although the RPCs do not address a situation when a firm represents both a client and the former attorney of that client's adversary in the same or a substantially related manner, courts have held that such circumstances are analogous to those forbidden by Rule 1.9. Cendant Brief at 24. In *Greig v. Macy's Northeast, Inc.*, 1 F.Supp.2d 397 (D.N.J. 1998), a magistrate judge disqualified a law firm from representing both the defendant department store and plaintiff's former attorney, whom had been joined as a defendant. 1 F.Supp.2d at 401. *Greig* found the situation to be analogous to a case of a side-switching attorney under Rule 1.9(a)(1): "[The former client] should not be forced into a situation where [its] confidences are revealed to [its] adversaries, who [are] still involved in pending litigation and whose knowledge of [its] confidences would case her the greatest harm." *Id.* at 401–402. Even though the magistrate judge assumed that none of the plaintiff's confidences with her former attorney had actually been revealed to the law firm, she determined that the actual revelation of confidences was not necessary:

> The moving party need not demonstrate that an *actual* breach of confidence occurred before disqualification is warranted, but "only a showing of the possibility of such a breach by virtue of the similarity of representations."

*Id.* at 402 (quoting *Essex*, 975 F.Supp. 650) (emphasis added). One firm's representation of both the plaintiff's adversary and the plaintiff's former attorney created an appearance of impropriety under Rule 1.7(c) which required disqualification because "the public would find it unjust to permit [the defendant's] defense to be conducted by attorneys who may have been privy to the confidences gained by [the plaintiff's] former attorney in this action, and have, thus, gained an unfair advantage." *Id.* at 404. Because Rule 1.9 applies to situations when representation of a *former* client is adverse to the interests a current client, as opposed to concurrent representation of two clients, Rule 1.9 is not implicated by the factual circumstances here. However, as will be discussed, the *Greig* analysis under Rule 1.7(c) is directly applicable.

### 3. Rule 1.7(c)

■ New Jersey Rule of Professional Conduct 1.7(c) reads:

> [T]his rule shall not alter the effect of case law or ethics opinions that: ... (2) in certain cases or situations creating an appearance of impropriety rather than an actual conflict, *multiple representation is not permissible,* that is, in those situations in which the *ordinary knowledgeable citizen acquainted with the facts* would conclude that the multiple representation poses a *substantial risk of disservice to either the public interest or the interest of one of the clients.*

RPC 1.7(c) (emphasis added).[6] New Jersey state and federal courts have consistently held that the appearance of impropriety doctrine is not intended to prevent any actual conflicts, but rather to "bolster the public['s] confidence in the integrity of the legal profession." *State v. Loyal,* 164 N.J. 418, 753 A.2d 1073 (2000) (citations omitted); *Essex Chemical Corp. v. Hartford Accident and Indemnity Co.,* 993 F.Supp. 241, 253 (D.N.J.1998) (citations omitted). The question of whether an appearance of impropriety exists must be resolved from the viewpoint of informed and concerned citizens. *Essex,* 993

---

6. As E & Y observes, although the New Jersey Supreme Court recently considered abolishing Rule 1.7(c), it decided to wait until "after the ABA's *Commission on Evaluation of the Rules of Professional Conduct,* known as Ethics 2000 Commission has submitted its report" before ruling on this proposal. E & Y Brief, at 16–17 n. 10, quoting *State v. Loyal,* 164 N.J. 418, 456, 753 A.2d 1073 (2000) (Coleman, J., dissenting). The rule is still in effect.

F.Supp. at 253. *See also Loyal,* 164 N.J. at 430, 753 A.2d 1073 (court views the facts as would "an ordinary knowledgeable citizen acquainted with the facts") (quoting *Dewey v. R.J. Reynolds Tobacco Co.,* 109 N.J. 201, 216, 536 A.2d 243 (1988)). "An appearance of impropriety must be 'something more than a fanciful possibility' and 'must have some reasonable basis.'" *Loyal,* 164 N.J. at 429, 753 A.2d at 1080, quoting *In re Opinion No. 653,* 132 N.J. 124, 132, 623 A.2d 241 (1993).

> That inquiry is highly fact-sensitive.... Where there exists an appearance of impropriety in an attorney's representation of a client, that representation generally must cease.... Once an appearance of impropriety is found, *"only in extraordinary cases should a client's right to counsel of his or her choice outweigh the need to maintain the highest standards of the profession."*

*Loyal,* 164 N.J. at 430, 753 A.2d 1073 (citations omitted) (emphasis added).

■ Cendant relies on *Greig,* which found that the law firm's dual representation of both the civil rights defendant department store as well as the plaintiff's former attorney created an appearance of impropriety; "the mere possibility that the plaintiff's former attorney would share its confidences meant that the 'public's perception of the legal profession and the judicial process would be tarnished.'" Cendant Brief, at 37, quoting *Greig,* 1 F.Supp.2d at 404. The dual representation of both Ms. Lipton and E & Y cannot possibly avoid the creation of an appearance of impropriety because it creates serious questions about Paul Weiss' ability to serve loyally two clients in the same case with conflicting interests. Cendant Brief at 37. Cendant contends that Paul Weiss' zeal will be impaired by having to defend Ms. Lipton in cross examination by another of the firm's clients (even if that actual examination is conducted by E & Y's co-counsel) and that Mr. Wells may be required to argue in his summation that Ms. Lipton's testimony is not to be believed.

This argument is off target. The issue is not whether the zeal of Paul Weiss will *actually* be impaired but whether the *average citizen, viewing these facts, would believe* that Paul Weiss' zeal could be impaired by such a situation. The circumstances of this case compel a finding of an appearance of impropriety under this provision, even with E & Y's proposed ethics screens, which are not permitted in New Jersey. "The appearance of impropriety alone may be sufficient to present an ethical problem *even though no actual impropriety exists."* *Loyal,* 164 N.J. at 429, 753 A.2d at 1080 (emphasis added).

E & Y responds that no appearance of impropriety exists here because there is no "substantial risk of disservice" to Ms. Lipton as a result of Mr. Wells' representation of E & Y. E & Y Brief at 18, quoting *Essex,* 993 F.Supp. at 253. E & Y claims that no risk exists because of the stringent ethical safeguards established at Paul Weiss to prevent Mr. Wells from access to Ms. Lipton's files or discussions concerning her representation. To resay, this procedure does not establish the absence of a conflict but would merely be a remedy and, in any event, is not permitted by New Jersey law. E & Y fails to address that the issue is an *appearance* of a risk, not whether there is evidence of actual improper conduct on the part of counsel. E & Y relies on a District of Illinois case which found no "appearance of impropriety" when a potential adverse witness who had shared confidences with defense counsel in an earlier matter would be cross-examined by someone other than that defense firm. *Swanson v. Wabash,* 585 F.Supp. 1094 (N.D.Ill.1984). *Swanson* is not directly relevant here because it involved a *former* client, instead of a current client. Paul Weiss' *simultaneous* representation of Ms. Lipton and E & Y would create a far greater risk of disclosure of confidences (even inadvertently) or of less vigorous representation than would the

representation in *Swanson*.[7] Even if this Court were to contemplate implementing the type of ethical screens that some other jurisdictions have adopted it would not be inclined to do so in cases of simultaneous representation of conflicting interests.

In *Catanoso*, the trial court determined that the attorney who would be required to cross–examine his former client in an unrelated matter would violate Rule 1.7(c): He would necessarily "breach the duty of loyalty that he owes to his former client." 222 N.J.Super. at 648, 537 A.2d 794. Similarly, in *Loyal*, the New Jersey Supreme Court affirmed the trial court's declaration of a mistrial where a defense attorney had previously represented one of the state's major witnesses in another matter, citing that the situation created an "appearance of impropriety." 164 N.J. at 418, 753 A.2d at 1076. The trial court had found that the witness, while not the "chief" witness, would be a "key witness" and observed that it was "beyond dispute that an appearance of impropriety is created requiring the attorney [to] be disqualified." *Id.* at 426, 753 A.2d 1073.

*Greig* found that the law firm that represented both the defendant and the plaintiff's former lawyer in the same action violated Rule 1.7(c) and required disqualification because of the mere possibility that confidences might be exploited:

> [I]t is unlikely that the *public* would perceive Macy's representation as adequate, let alone zealous, if conducted by attorneys who possess knowledge which may assist in [defendant's] defense, but

must refrain from utilizing that knowledge because it was obtained through the conflicted relationship. Further, *it would appear equally unprincipled for [the former attorney's] defense to be conducted by counsel who were constrained from fully advising themselves of the facts of the case for fear that they might be seeking protected communications from [defendant] which would give rise to an unfair advantage in their defense of [defendant.]*

*Greig*, 1 F.Supp.2d at 404 (emphasis added). The facts of *Greig* are virtually identical to ours. Whether Ms. Lipton's interview with the Audit Committee waived the attorney-client privilege, in part or in full, does not avoid the appearance of impropriety—to the average citizen, Ms. Lipton and this Court—the potential for misuse of confidences or alternatively, overcompensation by Paul Weiss for fear of gaining an unfair advantage.[8] Under Rule 1.7(c), Mr. Wells cannot avoid the appearance of impropriety that would be created by his representation of E & Y. The Court repeats that it does not question the integrity or sincerity of purpose of Mr. Wells. But this arrangement, as the Court observed at oral argument, "just doesn't look or smell right" to the public. And it cannot be otherwise.

### III. *Ethics Screens Are Neither Permissible Nor Sufficient Under These Circumstances*

■ Rule 1.10 imputes to every lawyer in a firm any conflict under Rules 1.7 and/

---

7. *Swanson* stated that the following three conditions would "obviate the need for disqualifying" the attorneys: (1) that all of the attorneys in the firm sought to be disqualified file affidavits stating that they had not revealed any of the former client's confidences; (2) that the defendants represented by the firm file written waivers of their right to have that firm cross-examine the witness; and (3) a protective order be entered prohibiting the firm's attorneys who had previously represented the witness from revealing to any of the other defendants' attorneys any of the witness's confidences in the future. 585 F.Supp. at 1097.

8. Moreover, E & Y's argument that there is no risk of inadvertent disclosure of confidences because Ms. Lipton waived the attorney-client privilege and already disclosed the substance of her testimony during her interview with the Audit Committee misses the mark. Apart from any attorney-client privilege with regard to confidences Ms. Lipton received from Cendant, there is still a risk of inadvertent disclosure of privileged communications between her and her current attorneys.

or 1.9. Unavoidable conflicts would be created by the dual representation of E & Y and Ms. Lipton under Rules 1.7(a), (b) and (c). It follows then that, by imputation under Rule 1.10, no attorney at Paul Weiss, including Mr. Wells, may represent E & Y. E & Y represents that conflicts should not be found under the RPCs because of the "ethical safeguards" Paul Weiss has established to prevent Mr. Wells from access to Ms. Lipton's files or discussing the nature of her representation with others at the firm. The proposed ethical safeguards would not necessarily eliminate the existence of a conflict but instead sound more as a proposed remedy for such a conflict.

The use of ethical screens or walls proposed by E & Y have not been approved in New Jersey. *See Cardona v. General Motors,* 942 F.Supp. 968, 977, *appeal denied,* 939 F.Supp. 351 (D.N.J.1996). The district court in *Cardona* commented: "Ethics screens have never been approved in New Jersey, even if the [Advisory Committee on Professional Ethics] has, on occasion, declined to comment on proposed ethics screens." 942 F.Supp. at 976, citing *N.J. Adv. Comm. on Ethics Opinion No. 667,* 132 N.J.L.J. 522 (1992) (refusing to determine appropriateness of ethics screen where consent issue had not yet been resolved). New Jersey does recognize the use of a screen in the case of a former government lawyer (governed by Rule 1.11, not applicable here) and has occasionally approved of such screens in cases that involved insulating (1) an attorney whose spouse had a conflict and (2) insulating a "side-switching" paralegal. *See Cardona,* citing N.J. Adv. Comm. on Prof. Ethics, Opinions Nos. 434, 508, 600, 460, 467, 660, 665. This Court's research has also located cases that approved the use of such "Chinese walls" when a law firm hired a former law clerk or lawyer who had previously worked in asbestos or tobacco litigation at another firm and who would have no involvement in those cases at her new firm (Opinion 633, 525). *None* of these cases involved insulating attorneys at the same firm who *simultaneously* represented two different clients with conflicting interests in the *same* litigation. The district court in *Cardona* further reasoned:

> As one authority has noted, ... "[t]he practicalities of screening arrangements are their most serious weakness.... In the end there is little but the self-serving assurance of the screening-lawyer foxes that they will carefully guard the screened-lawyer chickens."

942 F.Supp. at 977, quoting Charles W. Wolfram, *Modern Legal Ethics* § 7.6.4, at 402 (West Hornbook Series 1986) (internal citation omitted). Rules in jurisdictions which permit ethics screens in limited circumstances apply only to situations involving former clients. *See, e.g.,* Pa. R.P.C. 1.10(b)(1), MA R.S.Ct. Rule 3:07 Rule 1.10(d), OR Eth. Op.1991–120 (citing OR DR 5–105(I)). They do not treat situations involving *simultaneous representation* of two clients where a violation of any subsection of Rule 1.7 is present. There is simply no basis to accept the use of such screens in cases of *concurrent* representation.

Imputation of conflicts to other lawyers in a firm has been justified:

> Clients seeking an attorney-client relationship expect to receive an attorney's undivided loyalty. This expectation suggests that representing conflicting or adverse client interests may cause a "lay client ... to doubt the loyalty of a lawyer who undertakes to oppose him in an unrelated matter." ... An attorney representing adverse client interests may fear the zealous, aggressive representation of one client will antagonize or frustrate the other concurrently represented client. Removing this concern enables attorneys to render more candid and forthcoming legal advice. Clients directly benefit by receiving the appropriate level of zealous legal representation mandated by ethics rules.

Burkhart R. Lindahl, Ohio's New Ethical Screening Procedure, 31 *U. Tol. L.Rev.*

145, 149 (Fall 1999) [hereinafter Lindahl], 31 U. Tol. L.Rev. at 149. This is precisely Ms. Lipton's concern. On the other hand, imputing disqualification to an entire law firm has the undesirable effect of decreasing mobility of lawyers among firms. *Id.*, 31 U. Tol. L.Rev. at 157. Nevertheless, this concern cannot outweigh the public's and parties' requirements that courts uphold the rules of professional responsibility. Imputation is the rule in New Jersey and most other jurisdictions. New Jersey simply does not permit concurrent representation where the interests of two current clients are adverse. This Court believes and finds that the safeguards at Paul Weiss are insufficient to overcome the appearance of impropriety under Rule 1.7(c) or the potential for breach of the duties of loyalty and confidentiality if it were to represent both E & Y and Ms. Lipton. Counsel for E & Y has not identified a single court case or ethics opinion which explicitly approved of a remedy of ethical screens when there is concurrent representation. And this Court has not independently identified any such case.[9]

### IV. Balancing of Interests

█ Because disqualification of counsel during pending litigation is an extreme measure, courts must closely scrutinize the facts of each case to avoid injustice. *See Dewey*, 109 N.J. at 221, 536 A.2d at 243; *Reardon*, 83 N.J. at 469, 416 A.2d 852. The court must balance the hardships to the client whose lawyer is sought to be disqualified against the potential harm to the adversary should the attorney be permitted to proceed. *Essex*, 993 F.Supp. at 254, citing *Carlyle*, 944 F.Supp. at 345. The court balances the competing interests of the "need to maintain the highest standards of the profession" against "a client's right freely to choose his counsel." *Dewey*, quoting *Government of India v. Cook Indus.*, 569 F.2d 737, 739 (2d Cir.1978) (internal quotation marks omitted). Con-

trary to counsel's contention at oral argument that E & Y is "entitled to trial counsel of its choosing," courts in New Jersey recognize that "a person's right to retain counsel of his or her choice is limited in that 'there is no right to demand to be represented by an attorney disqualified because of an ethical requirement.'" *Dewey*, 109 N.J. at 218, 536 A.2d 243, quoting *Reardon*, 83 N.J. at 477, 416 A.2d 852. "Although doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified." *Carlyle*, 944 F.Supp. at 345, quoting *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1114 (D.N.J.1993).

█ Notwithstanding the requirement that the court weigh the competing interests at stake, the weight of authority suggests that where an ethical violation is found under either Rule 1.7 or 1.9, disqualification can be avoided only in "extraordinary cases." *Loyal*, 164 N.J. at 429, 753 A.2d 1073; *Dewey*, 109 N.J. at 220, 536 A.2d 243; *Greig*, 1 F.Supp.2d at 404–05. *See also, Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.*, Civ. A. No. 91–5433, 1994 WL 62124 (D.N.J. Feb. 23, 1994) (*per se* rule of disqualification is applied when Rule 1.7 is breached because "the interest sought to be protected . . . is one of loyalty"); *Manoir–Electroalloys Corp. v. Amalloy Corp.*, 711 F.Supp. 188, 195–96 (D.N.J.1989) ("Because the interest sought to be protected by Model Rule 1.7 is one of loyalty, a *per se* rule of disqualification will not only protect the present client but will have the salutary effect of promoting public confidence in the integrity of the bar and the judicial system."); *GF Industries, Inc. v. American Brands, Inc.*, 245 N.J.Super. 8, 17, 583 A.2d 765, 770 (App. Div.1990) (upholding disqualification of firm which represented the defendant in

9. Despite E & Y's contention at oral argument that the reason no such cases are reported is that law firms use such ethical screens in situations such as this all the time, counsel for E & Y could not supply any anecdotal evidence to support this contention.

breach of warranty action where that firm had previously had long-standing relationship with plaintiff), quoting *Dewey*, 109 N.J. at 221, 536 A.2d 243. Thus, even where one party is adversely affected by the firm's disqualification, "anything short of disqualification would tend to undermine the high ethical standards which the Supreme Court of this State has sought so diligently to uphold." *Id.* (citation omitted). On the other hand, disqualification of attorneys may cause delay in the proceedings. *Dewey*, 109 N.J. at 218, 536 A.2d 243.

■ The factors E & Y argues weigh in favor of allowing the representation are (1) E & Y's right to counsel of its choosing; and (2) the potential prejudice to E & Y that would result if Mr. Wells is not permitted to represent it.[10] Neither persuades the Court that Ms. Wells should be permitted to represent E & Y. The right to counsel of choice is not absolute when ethical conflicts would result. *Dewey*, 109 N.J. at 218, 536 A.2d 243. Furthermore, this Court does not find that E & Y would be prejudiced by denial of its motion. Although E & Y argues that Mr. Wells has been indispensible in developing trial strategies since the inception of the litigation, courts have not hesitated to disqualify lawyers who have participated for two or three years in the representation of a client when required by the rules to do so. *See Greig*, 1 F.Supp.2d at 404; *GF Industries*, 245 N.J.Super. at 17, 583 A.2d 765. And, practically, the conflict between E & Y and Cendant has been on hold-in truce-pending the resolution of the classes' claims against them. Even with all parties' agreement that Mr. Wells is a brilliant trial lawyer, E & Y would not be prejudiced by requiring it to obtain other trial counsel. It is not anywhere near the "eve of trial," which is not expected until some time in mid- or late 2002. E & Y is

represented by eminent attorneys at both Lowenstein and Mayer, Brown and Platt. This Court is confident that E & Y will be well represented during discovery and at trial and not unfairly prejudiced by the absence of Mr. Wells.

Although disqualification in circumstances such as those presented might be viewed as impairing the mobility of attorneys, courts hold that this interest is outweighed by the necessity to uphold rules of professional conduct. In *Reardon*, the Supreme Court of New Jersey rejected that argument as a basis to avoid disqualification:

> Problems of the job market and mobility are not solved by loosening ethical standards required of the profession. The rules of professional behavior are not branches which bend and sway in the winds of the job market and changes in the size and location of law firms. Rather the rules must be the bedrock of professional conduct.

83 N.J. at 475, 416 A.2d 852. Although this Court is most sympathetic to Mr. Wells' desire to affiliate himself with a new law firm, this factor cannot outweigh the interests of the parties, others affected by the dual representation, and the public. Ms. Lipton has a right to have faith that her attorneys are keeping their vow not to share her confidences. Similarly, the public's perception of Paul Weiss and the legal profession would suffer if the dual representation were allowed.

### CONCLUSION

Because E & Y has failed to establish that the dual representation by Paul Weiss and Theordore Wells, Esq. of E & Y and Amy Lipton would not constitute ethical violations under Rules 1.7(a)-(c) of the New Jersey Rules of Professional Conduct, E & Y's motion for a declaratory

---

**10.** While E & Y further contends that Cendant's opposition to E & Y's representation by Paul Weiss is "nothing more than a vexatious attempt to deprive E & Y of its existing counsel of choice," E & Y Brief at 4, Cendant's motive in opposing E & Y's motion is irrelevant.

judgment that Mr. Wells may represent E & Y is denied.

**SO ORDERED.**

## ORDER

WHEREAS, this matter is before the Court on the motion of Ernst & Young, LLP ("E & Y"), for declaratory judgment that Paul, Weiss, Rifkind, Wharton and Garrison and Theodore Wells, Esq. may concurrently represent both Amy Lipton and E & Y; and

WHEREAS, the Court has considered the submissions by the parties and oral arguments; and

WHEREAS, it appears that Mr. Wells' representation of E & Y would constitute violations of Rules 1.7(a), (b) and (c) of the New Jersey Rules of Professional Conduct;

For the reasons found in the accompanying opinion,

It is on this ___ day of November, 2000:

ORDERED that E & Y's motion for a declaratory judgment is DENIED.